**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBERT J. McCALLUM,   :
         :  Civil Action No. 03-2529 (WJM)
     Petitioner, :
         :
    v.     :  **OPINION**
         :
TERRY MOORE, et al.,   :
         :
     Respondents. :


**APPEARANCES:**

Petitioner pro se     Counsel for Respondents
Robert J. McCallum    Catherine Antoine Foddai
East Jersey State Prison   Bergen Co. Prosecutor's Office
#271502        Bergen Co. Justice Center
S.B.I. # 388799B     Hackensack, NJ 07601
Lock Bag R
Rahway, NJ 07065

**MARTINI**, District Judge

 Petitioner Robert J. McCallum, a prisoner currently confined at East Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Terry Moore and the Attorney General of New Jersey.

 For the reasons stated herein, the Petition must be denied.

## I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

On May 18, 1993, the superintendent of Janeze Dennis' Hackensack apartment heard a moan coming from the parking lot area.  From a window, she observed Dennis covered with blood.  In response to a radio dispatch, Hackensack Police Sergeant William Osinski found Dennis in front of the apartment complex.  She had been shot in the left side of her neck.  The sergeant and other police officers thereupon entered Dennis' apartment and found the body of Reynard Dunbar.

Dennis told the police that defendant, her cousin, had shot Dunbar.  The State produced evidence from which a jury could reasonably conclude that Dennis and Dunbar were drug dealers and had a long-time relationship.  During the year prior to the shooting, more than $10,000 had been wired to Dennis from Dunbar's Syracuse apartment.  At the time of the murder, Dennis was leasing a 1990 BMW, having made a $20,000 down-payment.  Days prior to the shooting, calls were made to and from a pay phone in Syracuse, New York, to Dennis' mother's residence in Mount Vernon, New York.

After defendant was arrested and Mirandized,[note] he denied any involvement in the shooting of Dunbar or Dennis.  Later, in a sworn statement, defendant said he had known Dunbar for some time and assumed that Dunbar and Dennis had a romantic relationship.  According to defendant, on the day of the shooting he entered Dennis' apartment and was told by Dennis to leave.  He was then confronted by Dunbar who was armed with a

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

handgun.  Dunbar grabbed Dennis and hit defendant in
the head.  A scuffle ensued during which the gun was
fired twice, the second shot hitting Dunbar in the
face.  Dennis as well was hit by a bullet.  Defendant
thereupon went through Dunbar's pockets, took $30, and
left the apartment.  Before he left he told Dennis to
call an ambulance.  After proceeding over the George
Washington Bridge, he threw the handgun into the Hudson
River.  In a third statement to police, defendant
disavowed any involvement in the incident, claiming
that Dunbar had been shot by Riccardo Gunn, a drug
dealer.

> [note] Miranda v. Arizona, 384 U.S.
> 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
> (1966).

The State's theory, supported by the proofs and
reasonable inferences to be drawn therefrom, was that
defendant and Dennis had planned Dunbar's murder by
luring him to Dennis' apartment and shooting him
execution-style.  In support of that theory, the
prosecutor elicited testimony from Dr. Sunandan B.
Singh, Chief Bergen County Medical Examiner, that
Dunbar had been shot twice; once in the base of the
skull and once in the back of the neck.  Dr. Singh
testified that at the scene of the shooting he observed
a towel next to Dunbar's head.  Without objection, he
stated that there were multiple holes in the towel with
soot around some of the holes.  It was his opinion that
the towel was employed during the shooting; it was
folded in multiple layers and placed over the muzzle of
the gun.  The gun was then pressed against the victim's
neck and discharged.  Based in part on this evidence,
the prosecutor argued that defendant had committed an
execution-style murder.

(Answer, Ex. 4.)

B.   Procedural History

Pursuant to a jury trial in the Superior Court of New

Jersey, Law Division, Bergen County, Petitioner was convicted of

purposeful murder, N.J.S.A. 2C:11-3a(1), possession of a weapon

for an unlawful purpose, N.J.S.A. 2C:39-4a, and unlawful

possession of a weapon, N.J.S.A. 2C:39-5b.  Petitioner was sentenced to life imprisonment, with a thirty-year period of parole ineligibility.  On direct appeal, by Opinion entered September 25, 1997, the Superior Court, Appellate Division, affirmed.  (Answer, Ex. 4.)  The Supreme Court of New Jersey denied certification in an order filed April 24, 1998.  State v. McCallum, 153 N.J. 404 (1998).

Petitioner then filed a petition for post-conviction relief. That petition was denied by the trial court in an order filed April 10, 2000.  The Appellate Division affirmed the denial of post-conviction relief in an opinion filed October 15, 2001. (Answer, Ex. 12.)  The Supreme Court of New Jersey denied certification in an order filed April 29, 2002.  State v. McCallum, 172 N.J. 180 (2002).  This Petition followed.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

5

where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

<u>Packer</u>, 537 U.S. 3 (2002); <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).]

### III.   <u>ANALYSIS</u>

#### A.   <u>Evidentiary Rulings</u>

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie

for errors of state law.'" (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process or some other express constitutional right.

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial.  <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976).

1.  <u>Expert testimony of medical examiner</u>

At trial, the medical examiner opined that Dunbar was shot with a towel-wrapped gun, testimony which Petitioner contends was outside the scope of the medical examiner's expertise and was not factually supported by the record.  Applying the plain error rule to this allegation which had not been not raised at trial, the Appellate Division rejected Petitioner's claim.

> Dr. Singh was qualified as an expert in forensic pathology.  As such, he necessarily considers forensic evidence found at the crime scene in reaching medical conclusions regarding both the manner and cause of death.  <u>See</u> N.J.R.E. 702; <u>State v. Moore</u>, 122 N.J. 420, 458-59 (f1991); <u>State v. Labrutto</u>, 114 N.J. 187, 199-200 (1989).  His opinion that the towel was employed by folding it over the gun muzzle while it was placed at the back of the victim's neck was bottomed on both medical evidence and his personal observations of the murder scene.  He first described to the jury the two entrance wounds on the back of Dunbar's skull and neck. He traced the trajectory of the bullet wounds through the victim's body.  The witness found the towel lying

8

next to the victim.  Dr. Singh stated that, because the
victim suffered only two bullet wounds, and the towel
had eight or nine bullet holes, it was reasonable to
conclude that the towel had been folded over the muzzle
of the gun during its discharge, particularly since the
towel was singed and contained blood splatterings.  In
our view, the opinion was well within the doctor's
expertise and supported by the proofs.

In any event, Dr. Singh's opinion, even if
erroneously admitted, was at most harmless.  The State
produced Joyce Polyniak, a State Police forensic
scientist, who concurred in the findings of Dr. Singh
regarding the use of the towel.  It was also her
opinion that the muzzle of the gun was in contact with
the towel at the time the gun was discharged.  Defense
counsel made no objection to Polyniak's testimony.
Consequently, the inference that defendant had
committed an execution-style murder had factual support
even without Dr. Singh's opinion.

(Answer, Ex. 4.)

Petitioner has failed to establish any due process

deprivation deriving from the medical examiner's testimony.  The

Appellate Division found no error of state law and found, in the

alternative, that if there was any error it was harmless.

Petitioner is not entitled to relief on this claim.

2.   Admission of hearsay testimony from Maryanne Adams

Petitioner contends that the trial court should not have

admitted the hearsay testimony of Dennis' employer Maryanne

Adams.  The Appellate Division rejected this claim, also.

Defendant's first argument is that the testimony
of Dennis' employer, Mary Adams, was improperly
admitted under the "co-conspirator" exception to the
hearsay rule.  See N.J.R.E. 803(b)(5).  Dennis worked
for a home health care agency.  Adams was Dennis'
supervisor.  Over objection, Adams testified that the
evening before the murder Dennis called her and said

9

that she "had business to take care of" the next day.
Dennis ultimately agreed with Adams to care for an
elderly patient the next morning before taking the
remainder of the day off.

Citing State v. Phelps, 96 N.J. 500 (1984), the
trial judge ruled that Adams' testimony fell within the
"co-conspirator" exception under N.J.R.E. 803(b)(5).
We agree.  Three conditions must be satisfied for a
statement to qualify for admission under the rule:  (1)
the statement must have been made in furtherance of the
conspiracy; (2) the statement must have been made in
the course of the conspiracy; and (3) there must be
evidence, independent of the hearsay, of the existence
of the conspiracy and defendant's relation to it.
Phelps, supra, 96 N.J. at 509-10; State v. Harris, 298
N.J. Super. 478, 488 (App. Div. 1997).

Each of the conditions was satisfied here.  As
noted, the State's theory was that defendant and Dennis
planned the execution-style murder of Dunbar at Dennis'
apartment.  Dennis' request for the day off because she
"had business to take care of" facilitated that plan by
releasing her from the strictures of her employment on
the day the crime was committe4d.  She made the request
the day before the crime was carried out; it was
therefore clearly made during the course of the
conspiracy.  The State also produced independent
evidence of the conspiracy and defendant's involvement
in it.  There were numerous phone calls between Dunbar
and Dennis the days preceding the murder, during which
(it can be reasonably inferred) Dennis lured Dunbar to
her Hackensack apartment.  There was also evidence of
defendant's and Dennis' plan to meet at the apartment
contemporaneously with Dunbar's arrival.  Moreover, the
fact that defendant was not charged with conspiracy is
of no consequence.  See State v. Clausell, 121 N.J.
298, 336-37 (1990).

(Answer, Ex. 4.)

As the Appellate Division found there was no error of state

law, and Petitioner does not allege any specific constitutional

deprivation, he is not entitled to relief on this claim.

B.   <u>Prosecutorial Misconduct</u>

In his summation, the prosecutor alluded to certain facts not in evidence, specifically, that Petitioner's self-defense confession was made only after Petitioner was confronted with evidence inculpating him, and that the victim had been arrested previously with three pounds of marijuana, providing a basis for concluding that he was involved in drug trafficking.   The prosecutor also commented on more than one occasion on the fact that certain evidence was unrebutted by the defense and that, referring to the testimony that Dunbar was shot twice from the back by a towel-wrapped gun held up to his neck, "no one came in here and told you this was something else."   (Answer, Exs. 1, 20 at 44, 48, 57, 63.)

Petitioner contends that the prosecutor's comments in summation violated Petitioner's right to a fair trial and constituted improper comment on his Fifth Amendment right to remain silent.   Petitioner contends that the state's theory at trial was that Petitioner and Dennis agreed to kill Dunbar for some undisclosed reason that was connected to the drug dealing relationship that the state posited existed between Dunbar and Dennis.   To convicted Petitioner of purposeful murder based upon this theory, Petitioner contends that the state had to convince the jury that Petitioner's confession was credible except for details of the shooting and that Dunbar and Dennis had a purely

11

business relationship which involved the sale of illegal drugs.

Petitioner contends that, to that end, the prosecutor in

summation relied upon facts outside the record and improperly

commented on Petitioner's silence at trial.

>The Appellate Division rejected this claim.

>The bulk of the prosecutor's remarks during summation
>was amply supported by the evidence and reasonable
>inferences to be drawn therefrom.  State v. Dixon, 125
>N.J. 223, 259 (1991).  While some of the statements
>came close to the limit of proper comment, we cannot
>say that the offending remarks were "clearly and
>unmistakably" improper and resulted in depriving
>defendant of his fundamental right to a fair jury
>trial.  State v. Hightower, 120 N.J. 378, 411 (1990).

(Answer, Ex. 4.)

The U.S. Supreme Court has recognized the obligation of a

prosecutor to conduct a criminal prosecution with propriety and

fairness.

>He may prosecute with earnestness and vigor – indeed,
>he should do so.  But, while he may strike hard blows,
>he is not at liberty to strike foul ones.  It is as
>much his duty to refrain from improper methods
>calculated to produce a wrongful conviction as it is to
>use every legitimate means to bring about a just one.
>...  Consequently, improper suggestions, insinuations,
>and, especially, assertions of personal knowledge are
>apt to carry much weight against the accused when they
>should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line

separating acceptable from improper advocacy is not easily drawn;

there is often a gray zone.  Prosecutors sometime breach their

duty to refrain from overzealous conduct by commenting on the

12

defendant's guilt and offering unsolicited personal views on the
evidence." <u>United States v. Young</u>, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on
> the basis of the evidence presented to the jury; and
> the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the
> Government's judgment rather than its own view of the
> evidence.

<u>Id.</u> at 18.

Under U.S. Supreme Court precedent, where a prosecutor's
opening or closing remarks are challenged in habeas, "[t]he
relevant question is whether the prosecutor's comments 'so
infected the trial with unfairness as to make the resulting
conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477
U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S.
637 (1974)).  In evaluating the likely effect of improper
comments, a court may consider whether the improper comments were
invited by or responsive to prior comments by opposing counsel.
<u>Darden</u>, 477 U.S. at 181-82.  Thus, "Supreme Court precedent
counsels that the reviewing court must examine the prosecutor's
offensive actions in context and in light of the entire trial,
assessing the severity of the conduct, the effect of the curative
instructions, and the quantum of evidence against the defendant."
<u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

Here, the Appellate Division addressed Plaintiff's claim by applying the proper standard, whether the prosecutor's comments deprived Petitioner of his fundamental right to a fair trial. The Appellate Division's conclusion that the prosecutor's remarks did not deprive Petitioner of a fair trial is not contrary to nor an unreasonable application of applicable federal law.  In addition, this Court notes that the trial court reminded the jury, after the prosecutor's summation, that the burden of proof rests with the prosecution and never shifts to the defendant. "Mr. McCallum, as any defendant in a criminal case, has no obligation or any duty to prove his innocence or offer any proof relating to his innocence."  (Answer, Ex. 20 at 123.)  The trial court further reminded the jury to rely not on remarks of counsel, but upon their own recollections of evidence as proven by the testimony of the witnesses or from the exhibits that were marked into evidence.

In addition, the trial court addressed at length Petitioner's right to remain silent, an issue that had been raised by defense counsel in his summation.

Now, I told you at the outset that there is no obligation or burden put on Mr. McCallum to prove his innocence.

Mr. Meehan alluding to that in his closing statement and the fact that he did not take the witness stand.

He does not have to take the witness stand to offer any proof.

14

In fact, it is his constitutional right to remain silent, and he exercised that right in this case, and I charge you that you are not to consider for any purpose or in any manner in arriving at your verdict the fact that Mr. McCallum did not testify.

Nor should that fact enter into your deliberations or discussions in any manner or at any time.

A defendant is entitled to have a jury consider all of the evidence and he is entitled to the presumption of innocence whether or not he testifies as a witness.

You may not draw any inferences of guilt from the fact that Mr. McCallum did not testify.

(Answer, Ex. 20 at 129-30.)  Thus, to the extent the prosecutor inappropriately referred to unrebutted evidence or Petitioner's failure to testify, the curative instructions given by the trial court countered the prosecutor's remarks.  Accordingly, Petitioner is not entitled to relief on this claim.

C.   Jury Instructions

Petitioner contends that the trial court erred in its charge to the jury by failing to instruct the jury on how to determine credibility, by failing to provide the legal definition of "element of the offense" set forth in N.J.S.A. 2C:1-14h, and by failing to provide the legal definition of "conduct" set forth in N.J.S.A. 2C:1-4d.

Petitioner raised this claim in his petition for post-conviction relief.  Neither the trial court nor the Appellate Division found this claim to be of sufficient merit to warrant discussion.  (Answer, Exs. 12, 22.)

15

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 124 S.Ct. 1830, 1832 (2004) (internal quotations and citations omitted).

Here, the trial court instructed the jury at length as to how to determine credibility of witnesses.  (Answer, Ex. 20 at 130-31.)  The trial court instructed the jury that the state must prove each and every element of each charged offense in order to prove such offense.  In addition, with respect to certain issues, the court instructed the jury that it must consider "the nature and purpose of Defendant's conduct ... ."  (Answer, Ex. 20 at

142.)  Petitioner fails to explain how these instructions
deprived him of due process.  This Court can discern no error or
harm to Petitioner from the challenged instructions.  Petitioner
is not entitled to relief on this claim.

D.   <u>Ineffective Assistance of Counsel</u>

The Counsel Clause of the Sixth Amendment provides that a
criminal defendant "shall enjoy the right ... to have the
Assistance of Counsel for his defence."  U.S. Const. amend. VI.
The right to counsel is "the right to <u>effective</u> assistance of
counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)
(emphasis added).

To prevail on a claim of ineffective assistance of counsel,
a habeas petitioner must show both that his counsel's performance
fell below an objective standard of reasonable professional
assistance and that there is a reasonable probability that, but
for counsel's unprofessional errors, the outcome would have been
different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694
(1984).  A "reasonable probability" is "a probability sufficient
to undermine confidence in the outcome."  <u>Strickland</u> at 694.
Counsel's errors must have been "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable."
<u>Id.</u> at 687.  "When a defendant challenges a conviction, the
question is whether there is a reasonable probability that,

18

absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The Performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

1.   Trial Counsel

Petitioner contends that trial counsel provided ineffective assistance by failing to request a jury charge on specific intent, by failure to challenge the jury composition, by failure

to impeach witness Maryanne Adams, and by failure to prepare Petitioner to testify.

The PCR court rejected the claim of ineffective assistance of trial counsel and the Appellate Division affirmed the denial of relief.

Petitioner conceded in state courts that the trial court did instruct the jury that, in order to convict Petitioner of murder they had to find that he knowingly or purposely caused the death of the victim or serious bodily injury resulting in death and that he did not do so in the heat of passion.  The trial court further charged the jury on aggravated and reckless manslaughter as well as self-defense.  This Court can discern no error in the jury charge; thus, there does not appear to be any prejudice to Petitioner sufficient to establish ineffective assistance of counsel.

Petitioner has failed to establish any defect in the seating of the jury.  The jury pool consisted of "a few" African-Americans and the jury panel included one African-American juror.  The PCR court found that the African-American population of Bergen County was only approximately three percent and that Petitioner failed to present any evidence that the number of African-Americans on his or any jury panel was the result of anything except random selection.  Nor has Petitioner presented any such evidence here.  In the absence of any such evidence, it

cannot be said that Petitioner has established that the conduct of his trial counsel in failing to challenge the jury array fell below an acceptable standard of conduct. See 28 U.S.C. § 2254(e). Petitioner is not entitled to relief on this claim.

Petitioner claims that his trial counsel was ineffective for failing to impeach witness Maryanne Adams by pointing out the inconsistences between her trial testimony and her earlier statements to police regarding Dennis' telephone call that she would not be able to work on the day of the murder. Specifically, Petitioner contends that Ms. Adams' trial testimony differed from her earlier statement to police, in which she reportedly stated that Dennis called in to the office and spoke with somebody other than Ms. Adams. Even if there were inconsistencies between her statement to police and her trial testimony, they do not go to the essence of the testimony, which is that Dennis called in advance to arrange to be off work on the day of the murder. Any failure by counsel to point out the inconsistencies does not rise to the level of prejudice necessary to establish constitutionally ineffective assistance of counsel. Petitioner is not entitled to relief on this claim.

Finally, Petitioner contends that his trial counsel failed to prepare him to testify. At the end of trial, Petitioner advised his counsel that he desired to testify, contrary to what counsel believed was the result of their last discussion on the

21

subject.  (Answer, Ex. 20.)  After a short recess, and after the judge's reminder to Petitioner that, if he testified, the state could bring out his prior convictions, Petitioner decided not to testify.  Petitioner now contends that he did not testify because his counsel did not prepare him properly.

The PCR court found this contention to be completely without merit.  The PCR court found that Petitioner made the decision not to testify at trial and was raising this issue only because he did not like the result.  (Answer, Ex. 22 at 13.)  In any event, as the PCR court found, Petitioner has failed to establish any prejudice flowing from his failure to testify.  He does not suggest what testimony he would have given, had he testified, or how that testimony likely would have changed the result.  Petitioner is not entitled to relief on this claim.

2.  <u>Appellate Counsel</u>

Petitioner contends that his appellate counsel provided ineffective assistance by failing to raise trial counsel's incompetence as an issue on the direct appeal.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).  The <u>Strickland</u> standard for effective assistance of counsel applies to appellate counsel. <u>See</u> <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004).

22

Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Here, in fact, appellate counsel did raise ineffective assistance of trial counsel on appeal, but the Appellate Division declined to address the issue, indicating that because many of the claims may be based on evidence outside the record, the claim should be raised by a petition for post-conviction relief. (Answer, Ex. 4.)  Accordingly, Petitioner is not entitled to relief on this claim.

3.   PCR Counsel

Petitioner alleges that he received ineffective assistance of counsel in support of his petition for post-conviction relief. Ineffective assistance of counsel during state collateral post-conviction proceedings is not a ground for relief in a proceeding arising under § 2254.  See 28 U.S.C. § 2254(i).  Petitioner is not entitled to relief on this ground.

E.   Equal Protection Violation

Petitioner argues that the Appellate Division's affirmance of his conviction and sentence on the direct appeal resulted from

the court's prejudicial treatment of African-Americans.  In support of this contention, he submits only that the decision of the Appellate Division was erroneous, and that the error must have resulted from racial prejudice.  (Answer, Ex. 7 at 127a-129a.)

The PCR court did not specifically address this claim, and the Appellate Division found it to be of insufficient merit to warrant discussion.  (Answer, Ex. 12.)

Petitioner has failed to present any evidence whatsoever in support of this contention.  Petitioner is not entitled to relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

_____
William J. Martini
United States District Judge

Dated: